IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEIRDRE PRICE

    Plaintiff,

    v.

GREG MOODY,

    Defendant.

No. Civ. 05-1127 DFL KJM

MEMORANDUM OF OPINION AND ORDER

    Plaintiff Deirdre Price ("Price") brings this personal injury action seeking damages for injuries suffered when defendant Greg Moody ("Moody") collided with her while skiing at Alpine Meadows Ski Resort. Moody now moves to dismiss, arguing that Price's case is barred by the primary assumption of the risk doctrine. For the reasons stated below, Moody's motion is GRANTED.

I.

    On February 11, 2005, Price was participating in a ski clinic for ski instructors at Alpine Meadows Ski Resort. (Opp'n at 1.) Price was one of five or six students in the class taught

1

1 by Steven Evenson ("Evenson").  (Mot. at 2.)  Evenson has 30
2 years of experience as a staff trainer and ski instructor.  (Id.)

3   The collision occurred on Red Trail, an intermediate ski
4 run.  (Opp'n at 2.)  The ski traffic that day on Red Trail was
5 "moderate."  (Mot. at 3.)  Just before the collision, Price was
6 skiing down Red Trail with the other class participants making
7 "S" turns at about 10-15 miles per hour.  (Id.)

8   Moody entered Red Trail from the skiers' left side.  (Id.)
9 He skied across the trail and then gradually turned left to ski
10 down the fall line.  (Id.)  Moody first noticed Price when he
11 aligned himself with the fall line.  (Id.)  Price was
12 approximately 40 yards ahead of him, and he was approximately 75
13 yards from the collision site.  (Id. at 2-3.)

14   Moody asserts that when he began to ski down the fall line,
15 he saw Price skiing in a controlled turn pattern, and she
16 appeared to be a good skier.  (Id. at 4.)  Moody assumed that
17 Price would continue to ski in the same pattern, giving him about
18 15 feet of space to ski past her.  (Id.)  According to Moody,
19 when he was about 10 feet from Price, she changed her pattern and
20 skied further to the right than she had before.  (Id.)  He was
21 unable to avoid the collision.  (Id.)

22   Price does not remember the collision or the events
23 surrounding the collision.  (Id.)  Evenson saw Moody about 30
24 feet from where the collision occurred, skiing at about 25-30
25 miles per hour.  (Id.)  At that time, Moody appeared to be on a
26 collision course with Price.  (Id.)  Moody collided with Price

2

from her right rear side while she was making a right turn. (Opp'n at 4.)

## II.

Under the primary assumption of the risk doctrine, a sport participant has no duty to protect a coparticipant from a particular risk when the risk is "inherent in the sport." Cheong v. Antablin, 16 Cal.4th 1063, 1068 (1997). A risk is inherent if it cannot be eliminated without "fundamentally altering the nature of" or "chilling vigorous participation in" the sport. Knight v. Jewett, 3 Cal.4th 296, 317-19 (1992). The Knight court recognized that "in the heat of an active sporting event . . . a participant's normal energetic conduct often includes accidentally careless behavior." Id. at 318. Therefore, a participant is not liable "for ordinary careless conduct." Cheong, 16 Cal.4th at 1068 (citing Knight, 3 Cal.4th at 318).

However, participants still "have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." Lackner v. North, 135 Cal.App.4th 1188, 1199 (2006) (citing Knight, 3 Cal.4th at 315-16). Thus, a participant is liable "if [he] intentionally injures another . . . or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." Id. (citing Knight, 3 Cal.4th at 320).

Whether a duty exists in any particular fact setting is resolved by the court as a matter of law even though the duty determination inevitably rests on certain factual assumptions or

findings about the particular activity or sport.  See Knight, 3 Cal.4th at 305-06.

In the skiing context, courts generally view collisions between skiers as inherent risks of the sport such that injured skiers cannot recover for collision-related injuries.  Cheong, 16 Cal.4th at 1069-70; see also Lackner, 135 Cal.App.4th at 1199; Connelly v. Mammoth Mountain Ski Area, 39 Cal.App.4th 8, 12 (1995); Freeman v. Hale, 30 Cal.App.4th 1388, 1395 (1994); Green v. Sunday River Skiway Corp., 81 F.Supp.2d 122, 128 (D.Me. 1999); Rowan v. Vail Holdings, Inc., 31 F.Supp.2d 889, 902 (D.Colo. 1998).  Collisions that occur because one skier misjudges the distance or speed, the skill or intention of the other skier, his or her own ability to avoid a crash are all inherent risks of the sport of skiing.  To ask skiers to shoulder the burden of avoiding all collisions would fundamentally alter the sport by chilling vigorous participation.

In Cheong, plaintiff and defendant were skiing together at Alpine Meadows when defendant collided with plaintiff and injured him.  Defendant admitted that he "was skiing faster than [he] was comfortable with, in that [he] felt [he] was skiing too fast for existing conditions.  [He] turned to [his] right in an effort to slow down, regain control and stop.  As [he] did so, [he] collided" with the plaintiff.  Cheong, 16 Cal.4th at 1066.  The trial court found that he "did not act so recklessly as to bring him outside the bounds of the sports activity, and accordingly the defense of primary assumption of the risk operate[d] to bar

4

[plaintiff's] action." Id. at 1067. The California Supreme Court affirmed. Id. at 1072.

The Cheong court also held that local ordinances that delineate certain duties of skiers, such as the Placer County Skier's Responsibility Code (the "Skier's Code"), do not govern tort liability between skiers. Id. at 1069. The Skier's Code provides that "[i]t shall be unlawful for any person to ski faster than is safe and it shall be the duty of all skiers to ski in a safe and reasonable manner, under sufficient control to be able to stop or avoid other skiers or objects." Placer Code § 12.134. It also provides that, "[s]kiers shall not overtake any other skier except in such a manner as to avoid contact with the overtaken skier, and shall grant the right of way to the overtaken skier." Id. § 12.135. The Skier's Code might be thought to impose duties beyond those found in the general law of torts and negligence. Indeed, in her briefing plaintiff Price relies heavily on the Skier's Code in contending that Moody violated the duties imposed on a skier who is overtaking another skier. However, the court in Cheong held that the Skier's Code does not impose a higher duty on skiers than Knight. Id. The Cheong court reasoned that the Skier's Code is aspirational, not a standard for litigation. The Skier's Code provides no remedies and authorizes no right of action. Cheong, 16 Cal.4th at 1069. Instead, it "expressly provides that a skier 'shall assume and accept the inherent risks of such activities insofar as the risks are reasonably obvious, foreseeable or necessary to the

1  activities.'" Id. (citing Placer Code § 12.132).  The Skier's
2  Code "defines these inherent risks to include 'collision with
3  other skiers and a skier's failure to ski within the skier's own
4  ability.'" Id. (citing Placer Code § 12.131(a)).

5       Although skiers have no duty to avoid inadvertent collisions
6  like those in Cheong, and the Skier's Code is not determinative,
7  skiers do have a duty to avoid increasing the risk of collisions.
8  Freeman, 30 Cal.App.4th at 1396.  Intentional collisions are not
9  part of the sport of skiing.  Nor are collisions that result from
10 some kind of extraordinary behavior, fairly described as
11 reckless, such as skiing under the influence or not looking in
12 the direction of travel.  Thus, in Freeman, the defendant was
13 found liable for colliding with plaintiff when he had been
14 consuming alcohol before and while skiing.  Id.  The court found
15 that drinking is not an activity ordinarily involved in skiing,
16 and "the increased risks presented by the consumption of alcohol
17 are not inherent in the sport of skiing." Id.

18      Similarly, in Lackner, the court denied summary judgment to
19 a snowboarder who collided with a skier because the snowboarder:
20 (1) was racing extremely fast with high school teammates down an
21 unfamiliar, advanced run; (2) was preoccupied with looking back
22 at his teammates to check their relative positions; and, (3) hit
23 a skier who was stopped on a flat area used as a rest stop.
24 Lackner, 135 Cal.App.4th at 1200-01.  The court found that a
25 reasonable jury could conclude that, in these circumstances, the
26 collision was not inadvertent or a result of mere negligence.

Id. at 1201.  Accord Mammoth Mountain Ski Area v. Graham, 135 Cal.App.4th 1367, 1374 (2006) (collision resulting from defendant's participation in a snowball fight while moving down the slope was not inherent to the sport.)

The facts here are not comparable to those cases finding a sufficient allegation of reckless conduct to permit liability for a collision between skiers.  Price does not allege that Moody intentionally sought to collide with her.  She does not allege that he was doing anything other than trying to get down the slope quickly without making sufficient allowance for her.  She does not allege that he was racing, inebriated, throwing snowballs, or skiing without looking where he was headed.  Rather, she merely claims that Moody was a good skier, that he was overtaking her and knew that she could not see him, that he was skiing quickly (although not extremely so), that he badly misjudged how she was skiing, and that it was his responsibility as the overtaking skier to avoid a collision.  This does not amount to the kind of reckless behavior that is outside the normal risks of skiing with other skiers who cause collisions through misjudgments or lack of care.

Price's brief relies heavily on the Skier's Code and Evenson's opinion to argue that collisions are not inherent to skiing and that Moody had a duty to avoid colliding with Price.  Evenson gives the opinion that "Moody's conduct was completely outside of what is expected of skiers who are attempting to comply with the basic fundamental safety rules."  (Opp'n at 5.)

He suggests that a skier trying to follow the rules on overtaking a slower skier would have behaved differently by altering course and slowing down.  Yet even with Evenson's carefully worded opinion, the factual allegations do not add up to the kind of extraordinary conduct that is required before a collision due to misjudgment of speed, distance, circumstances, and the intention of the other skier will be deemed "so reckless as to be totally outside the range of the ordinary activity involved in the sport."  Lackner, 135 Cal.App.4th at 1199 (citing Knight, 3 Cal.4th at 315-16).  Evenson's opinion, at best, could lead a reasonable jury to infer that Moody was negligent because inattentive or over confident.  But in the context of a sport based on the thrill of speed and the tug of war between the skier and gravity, on a slick, uneven surface, liability does not follow from errors of judgment and negligent failure to follow safety rules like those encompassed in the Skier's Code.  Cheong, 16 Cal.4th at 1069.

   Because Price has not introduced sufficient facts to show that Moody's conduct was outside the scope of the inherent risks of skiing, the primary assumption of the risk doctrine bars Price's claim.

////

////

////

////

////

III.

For the reasons stated above, the court GRANTS summary judgment in favor of defendant Moody.

IT IS SO ORDERED.

Dated: 26 June 2006

_____
DAVID F. LEVI
United States District Judge